## Evans et al. v. Leer et al.

(Decided January 14, 1930.)

B. S. GRANNIS and EDWARD C. O'REAR for appellants.

JOHN P. McCARTNEY and WORTHINGTON, BROWNING & REED for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

A. H. Evans, a resident of Fleming county, died in the year 1925, leaving a will, which, omitting the immaterial portions, is as follows:

"I, A. H. Evans, being in feeble health, but of sound mind and disposing memory, do make and publish this my last will and testament, revoking all wills heretofore made.

"First: I will as soon as practicable after my death my Executors pay all my debts and funeral expenses.

"Second: I will to the Fleming County Cemetery Company One Hundred Dollars ($100.00) to be held by them as a trust fund and the income used to keep my lot in said cemetery in order.

"Third: All the remainder of my estate of every kind, real, personal and mixed, after the payment of my debts and the above bequest, I will to my beloved wife, Nannie B. Evans, for her life, with full right to use, consume and dispose of same as she sees fit, both as to income and principal as long as she lives, except that she may not dispose of same by will.

"Fourth: Whatever remains of my estate at the death of my wife, Nannie B. Evans, I will as follows:

"One-fifth to Irene Carney, wife of W. G. Carney, of Signal Hill Boulevard, E. St. Louis, Illinois, she being one of the three children of my beloved sister, Margaret Stockton. To the other two children of Margaret Stockton, Mary McKenzie and Loren Stockton, for reasons which I deem sufficient, I give nothing.

"One-fifth to the children and grandchildren of my sister, Sue Hopper, divided as follows: One-fourth to Thomas Hopper; one-fourth to Richard Hopper, both of Mayslick, Kentucky; one-fourth to Magnus T. Hopper, of Brooklyn, New York; and

one-fourth to the three children of Charles Hopper, deceased, to-wit.: Charles, Russell and Francis Douglas Hopper in equal moieties each.

"One-fifth to Mrs. Bessie Leer, daughter of my youngest sister, Josephine Prather.

"One-fifth to Harriett Ann Castleman, daughter of my sister, Mary Dupuy, if living, if not living to her children, Irene and Estelle Castleman.

"One-fifth to Mary Bishop Dudley, niece of my wife, who has been exceedingly kind to me and my wife, during our illness.

"Fifth: At the death of my wife, should any of the residuary legatees named in clause four be dead leaving children, such children are to take the part of such one dead, if they leave no children, then the same is to be divided amongst the other takers of that particular one-fifth, if any, and if not to revert to the devisees of the other four-fifths.

"Sixth: I hereby appoint my wife, Nannie B. Evans, as Executrix of this will to settle this estate in so far as it can be done at my death and during her lifetime and I further appoint my friend, Elzie Dye, residuary Executor of said will to take charge of the residue of my estate at my wife's death and finish settling same.

"I appoint B. S. Grannis, who has been my adviser for many years, as attorney for my personal representatives, his compensation to be agreed upon with such personal representatives or allowed by the Court."

At the time of his death, the testator and his wife, Nannie B. Evans, were each about 78 years of age, and each owned an estate of about $30,000, consisting principally of stocks and bonds. In addition to stocks and bonds, the testator owned a residence in Flemingsburg worth about $5,000 or $6,000. In March, 1926, the testator's widow, Nannie B. Evans, who had qualified as executrix, transferred to herself all the personalty that belonged to her husband, and made a final settlement of her accounts. In March, 1927, for the recited consideration of love and affection, she conveyed the residence property in Flemingsburg to Mary B. Dudley, her niece, for life, with remainder to Frances Wallace Dudley, the daughter of Mary B. Dudley. Thereafter Bessie Leer and others, devisees under the will, and the heirs of other

devisees, brought this suit under the Declaratory Judgment Act (Acts 1922, c. 83) for a construction of the will, and to set aside the deed to Mary B. Dudley and her daughter, Frances Wallace Dudley. Reserving other questions, the chancellor held that Nannie B. Evans took a life estate in all the decedent's property, coupled with the power to use any or all of same for her own personal use and benefit, but that she had no power under the will to give any of the property away or dispose of it for any purpose other than her own personal use and benefit. From that judgment this appeal is prosecuted.

There is no basis whatever for the contention that Mrs. Evans took the fee, and that therefore the limitation over was void. The rule is that, where property is devised to one absolutely, or what is equivalent in legal effect, with unlimited power of disposition, the limitation over of what remains undisposed of is void, but where a life estate only is devised with power of disposition the limitation over is valid. Trustees Presbyterian Church v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237; Phelps v. Stoner's Adm'r, 184 Ky. 466, 212 S. W. 423; Nelson v. Nelson's Ex'r, 140 Ky. 410, 131 S. W. 187; Becker v. Roth, 132 Ky. 429, 115 S. W. 761; Commonwealth v. Stoll's Adm'r, 132 Ky. 237, 114 S. W. 279, 116 S. W. 687; Plaggenborg v. Molendyk's Adm'r, 187 Ky. 509, 219 S. W. 438. Here Mrs. Evans was not given the estate either absolutely or with unlimited power of disposition. On the contrary, she was given a life estate with power only to dispose of the property in her lifetime, and the right to dispose of the property at her death was expressly withheld. In the circumstances she did not take the fee, but took only a life estate with power to convert it into a fee, with the result that the devise over of whatever remained at her death was valid. McCullough's Adm'r v. Anderson, 90 Ky. 126, 13 S. W. 353, 11 Ky. Law Rep. 939, 7 L. R. A. 836; Angel v. Wood, 153 Ky. 195, 154 S. W. 1103; Browning v. Ashbrook's Ex'r, 175 Ky. 755, 195 S. W. 105. Hence the only question for consideration is, what is the extent of the power? Was it intended to be used solely for the benefit of the life tenant, or for the benefit of some one else? It is argued that, if it had been intended to devise the property to her only for her maintenance, support, and enjoyment, all that would have been necessary was to use the words "use and consume," but, having gone further and given her the right to "dispose of same as she sees fit,"

there was no limitation whatever on her power of disposition, and therefore she could give the property away if she so desired. In the case of Embry's Ex'x v. Embry's Devisees, 102 S. W. 239, 240, 31 Ky. Law Rep. 295, the language of the will under consideration was: "I give to my wife Sallie A. Embry all of my estate of every kind and character of which I die possessed, to do with as she may please during her life, and at her death if there is anything remaining of my estate of which I die possessed or the accumulations thereof, I desire that it shall go to and become the property of my daughter Zedie Arbuckle and her children. In the event of the death of either of my daughter's children before it becomes of age, then any portion of the estate that such children would inherit under this will I desire shall go to the brothers and sisters of said children in equal parts, share and share alike." Although given the power to do with the property as she might please during her life, it was held that she had the right to use, sell, and convey only so much of the estate as might be necessary for her comfortable support and maintenance, but did not have the right to dispose of the property as she pleased without reference to her interests. Clearly, the power "to use, consume and dispose of same as she sees fit both as to principal and income as long as she lives" is no broader than the power "to do with as she may please during her life." Not only so, but the case before us is all the stronger. Though the main purpose of the will was to make suitable provision for his wife, and to this end she was given full power during her lifetime to use, consume, and dispose of the entire estate, it must not be overlooked that the testator intended to provide for his nieces, nephews, and others out of whatever was left at the death of his wife. So fixed was his purpose in this respect that he denied to his wife the right to dispose of the property by will. It is not perceived why she should have been denied this power if it was the testator's purpose to confer on her the power while she lived to give the property away, and thus leave nothing on which the devise over might operate. We are therefore constrained to agree with the chancellor that Mrs. Evans took a life estate with full power to use, consume, and dispose of the entire property for her own use and benefit, but with no power to give the property away.

Judgment affirmed.